UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JENNIFER L. KONZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 09-11544-NMG |
| MICHAEL J. ASTRUE, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS REGARDING DENIAL OF
SOCIAL SECURITY DISABILITY INSURANCE BENEFITS**

November 8, 2010

DEIN, U.S.M.J.

## I.  INTRODUCTION

Plaintiff Jennifer L. Konz ("Konz" or "claimant") has brought this action pro se

pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the final

decision of the Commissioner of the Social Security Administration (the "Commission-

er") denying her claim for child's insurance benefits based on disability ("CIBD").  To be

eligible for CIBD, the claimant must establish that she is at least eighteen years old and

had a disability which began before she reached the age of twenty-two.  See 42 U.S.C.

§ 402(d)(1)(B), 20 C.F.R. § 404.350.  The Administrative Law Judge ("ALJ"), using the

required five-step sequential evaluation process detailed in 20 C.F.R. § 404.1520(a)(4),

concluded that Konz was not entitled to CIBD because she had not established that she was disabled as of May 2000, when she turned twenty-two.

This matter is presently before the court on Konz's "Motion to Appeal" the Commissioner's decision denying her CIBD (Docket No. 16), and on the Defendant's "Motion for an Order Affirming the Decision of the Commissioner." (Docket No. 14). In connection with these motions, "the court's function is a narrow one limited to determining whether there is substantial evidence to support the [ALJ's] findings and whether the decision conformed to statutory requirements." Geoffroy v. Sec'y of Health & Human Servs., 663 F.2d 315, 319 (1st Cir. 1981). The decision must be affirmed, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987), cert. denied, 484 U.S. 1012, 108 S. Ct. 713, 98 L. Ed. 2d 663 (1988). "Even in the presence of substantial evidence, however, the Court may review conclusions of law . . . and invalidate findings of fact that are 'derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts.'" Musto v. Halter, 135 F. Supp. 2d 220, 225 (D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)) (additional citations omitted).

Applying this deferential standard, this court finds that the ALJ's decision was supported by substantial evidence. Therefore, this court recommends to the District Judge to whom this case is assigned that the plaintiff's motion (Docket No. 16) be DENIED and that the defendant's motion (Docket No. 14) be ALLOWED.

## II.  STATEMENT OF FACTS[1]

### Overview

To qualify for benefits, generally, a claimant must show that he or she suffered from a disability, which is defined as "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 416(i)(1).  For CIBD, specifically, a claimant must establish, inter alia, that he or she had a disability that began before the age of twenty-two.  20 C.F.R. § 404.350(a)(5).  In the instant case, Konz contends that her disability began on May 1, 1981, and that she reached the age of twenty-two on May 8, 2000.  See 20 C.F.R. §§ 404.350(a)(5), 404.1571; Dec. 1, 3, Tr. 7, 9.  However, the ALJ concluded that Konz was not disabled prior to May 8, 2000, and that she had engaged in "substantial gainful activity" prior to that date.  20 C.F.R. § 404.1571; Dec. 3, Tr. 9.

"Substantial gainful activity" is defined by regulation as work that involves significant physical or mental activity that is done for pay or profit.  20 C.F.R. § 404.1572(a)-

---

[1]  References to pages in the administrative record (Docket No. 13), including the transcript of the proceedings below, shall be cited as "Tr. __." The ALJ's decision shall be cited as "Dec." and can be found beginning at Tr. 7.  In connection with her motion to reverse the Commissioner's decision, Konz submitted additional evidence that is not part of the administrative record.  See Pl. Br. (Docket No. 16) at Ex. 1 (Docket No. 16-1).  The court "may review the ALJ decision solely on the evidence presented to the ALJ." Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001).  Therefore, this court will not consider the additional evidence in determining whether the ALJ's decision is supported by substantial evidence.  Moreover, as detailed below, this additional evidence does not warrant a remand to the Commissioner.

(b).  Konz objects to the ALJ's finding that she engaged in substantial gainful activity and

was not disabled during the relevant time period.  She also seeks to admit new evidence

in support of her claim.  Pl. Br. 1-3.  However, as detailed below, the ALJ's

determination is supported by substantial evidence, and Konz has not shown either that

there is good cause for her failure to provide the additional evidence in the prior

proceedings, or that the new information is material to the issues in dispute.

## **Procedural History**

Konz filed an application for CIBD and Supplemental Security Income benefits

("SSI") on May 22, 2007,[2] claiming she had been disabled since May 1, 1981.  Tr. 68.

Konz's claim for SSI was granted after it was found she had been disabled as of February

15, 2002.  Tr. 31.  However, Konz's claim for CIBD was initially denied by the Regional

Commissioner in a letter dated October 10, 2007, after it was determined that Konz's

disability began February 15, 2002, after Konz had reached age twenty-two.  Tr. 31, 40-

42.  Konz requested a review of this denial, which was acknowledged by the Office of

Disability Adjudication and Review on February 26, 2008.  Tr. 43-44.  The Federal

Reviewing Official affirmed the Regional Commissioner's decision after reconsideration

in a letter dated March 17, 2008.  Tr. 32-39.

---

[2]  The Commissioner's brief and some material in the record suggest that Konz filed her
application on May 17, 2007.  See Dec. 1, Tr. 7, 36.  The discrepancy is not in dispute and is not
material to this court's recommendation.

Following this decision, Konz requested a hearing before an ALJ on April 11, 2008.  Tr. 46.  This hearing was held on March 12, 2009 in Boston, Massachusetts before James H. Packer, Administrative Law Judge ("ALJ").  Tr. 15.  Although she was advised on a number of occasions of her right to counsel, Konz represented herself at the proceeding and testified.  See Tr. 15, 18, 48-53, 56-57, 61-62.  Konz also submitted additional medical evidence, which the ALJ admitted into the administrative record.  Tr. 18.

The ALJ rendered a decision on April 20, 2009, finding that Konz did not qualify for CIBD.  Dec. 1-8, Tr. 7-14.  Konz appealed this decision.  Tr. 1.  The Decision Review Board affirmed the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of review.  Tr. 1; 20 C.F.R. § 405.420(b)(2).  Thus, Konz has exhausted all of her available administrative remedies, and the case is ripe for review by this court pursuant to 42 U.S.C. § 405(g).

**Medical Evidence**

The ALJ reviewed Konz's medical records in detail.  See Dec. 4-6, Tr. 10-12.  Briefly, the records show that "[t]he claimant was diagnosed with juvenile onset diabetes in November 1982 at the age of four[.]"  Dec. 4, Tr. 10.  "She was hospitalized on November 18, 1982 with complaints of polyuria, polydipsia and enuresis and a blood sugar level of 436.  She was placed on insulin and has been treated for this condition since that time."  Id.  Such treatment included a number of hospital admissions where the claimant was treated and released.  For example, the claimant was treated on August 23,

1983 for a probable hypoglycemic reaction, Tr. 429-30, 433, and had emergency room

visits for insulin reactions on November 22, 1983, March 25, 1984, and May 31, 1985.

Tr. 421-27.  Other medical records indicate that Konz was born with a small left kidney

which was surgically removed in 1988, as it was prone to frequent infections.  Tr. 198.

The ALJ concluded that, "viewing the evidence in the light most favorable to the

claimant," her diabetic condition constituted an impairment which "imposes more than a

minimal affect in her ability to perform the basic demands of competitive remunerative

work-related tasks" and, thus, constituted a "severe" impairment.  Dec. 4, Tr. 10.  In

contrast, the ALJ concluded that the removal of the claimant's kidney did "not impose

any significant limitations on her ability to perform basic work activities."  Id.  The

claimant does not challenge these findings and they will not be discussed further.

    Konz did not submit any medical records for the period of 1986 through 2003, and

she did not identify any medical providers for that period, either during her application

process or in her testimony before the ALJ.[3]  See Tr. 18-19, 104-05, 113-17, 126-28.  She

did provide medical records from the period of July 2004 forward, after she had moved

from Minnesota to Boston.  See Tr. 293.  These records indicate that she continued to be

treated for diabetes, and had been put on an insulin pump in January 2005, after the

premature birth of her child on November 24, 2004.[4]  Tr. 386.

---

[3]  The materials she has provided to this court do not cover this missing period either.

[4]  The claimant has had a number of miscarriages, both before and after her son's birth, which
account for a number of hospital records.  See Tr. 395.

Dr. Swaran Goswami, a state agency physician, reviewed the medical records and completed a "Physical Residual Functional Capacity Assessment" dated August 13, 2007. Tr. 385-92.  Dr. Goswami concluded that as of August 2007 Konz could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; could stand and/or walk with normal breaks for six hours in an eight-hour workday; could sit with normal breaks for about six hours in a normal workday; was unlimited in her ability to push or pull other than the aforementioned weight limitations; and had no postural limitations.  Tr. 385-88. Dr. Goswami also was of the opinion that Konz should avoid concentrated exposure to extreme temperatures, fumes, odors, gases, and poor ventilation.  Tr. 389.

As part of her application for disability benefits, the claimant underwent a psychiatric examination with Steven Broder, Ph.D. in September 2007.  Tr. 393-400. Konz reported to Dr. Broder, inter alia, that she had been disabled since she was three years old and had been in a diabetic coma from the age of three and one-half to five,[5] that she passed out at work two to four times a week prior to 2001 or 2002, at which time she stopped working, that she had been fired from her last eight jobs due to her passing out at work, and that she had a history of alcohol abuse but that she had not had a drink in four years.  Tr. 393-95.  Konz further reported that she took care of herself and her son during the day and cleaned the house, but that she was exhausted by these activities.  Tr. 396.

---

[5]  There are no medical records supporting the one and one-half year-long coma.

Konz was in a long-term relationship with the father of her son, and they all lived together.  <u>Tr.</u> 395-96.

Konz described herself as being depressed her whole life, and stated that she had had an alcoholic mother who died when Konz was 16.  <u>Tr.</u> 394.  After her mother's death, Konz drank heavily for about four to five years.  <u>Tr.</u> 394-95.  Konz denied any history of psychiatric hospitalization, but did say that she had had some therapy shortly after her mother died, and had recently resumed counseling.  <u>Tr.</u> 394.  The claimant had had a number of arrests, the last being in 1997.  <u>Tr.</u> 400.  Finally, Konz had "quite low scores" on various memory tests, with many falling at or below the borderline range.  <u>Tr.</u> 400.  Konz did not see herself returning to work any time soon.  <u>Tr.</u> 400.

Michael Maliszewski, Ph.D., a State agency psychologist, reviewed Dr. Broder's report and other medical evidence, and completed a "psychiatric review technique" in October 2007.  <u>Tr.</u> 401-18.  He determined that Konz had a cognitive disorder and borderline IQ, <u>Tr.</u> 402, suffered from major depression, <u>Tr.</u> 404, and had a personality disorder.  <u>Tr.</u> 408.  Dr. Maliszewski found Konz was either "not significantly limited" or "moderately limited" in various categories relating to understanding and memory, sustained concentration and persistence, and social interaction and adaptation, but that she had no marked limitations in any of those areas.  <u>Tr.</u> 415-16.

<u>**Konz's Personal Assessments**</u>

Konz completed a "Function Report" in June 2007 as part of her SSA application.  <u>Tr.</u> 85-92.  Therein she reported that she has "been sick for a very long time & it has

gotten a lot harder for me to do most things." Tr. 87. She reported that she took care of

her son, and did some housework, but required a great deal of assistance from her

boyfriend. E.g., Tr. 85-86. Konz reported monthly trips to the pharmacy, and regular

phone contact with a friend and her father. Tr. 89. Her moods varied with her sugar

levels, which "affects everything." Tr. 90. Konz reported memory and comprehension

deficiencies. Tr. 90. Konz also reported that she had "lost more than 2 jobs [due] to my

illness cause it is so hard to get along[.]" Tr. 90. She also reported losing jobs because

she passed out and missed work. Tr. 91.

According to Konz, she last worked on March 31, 2003 "because [her] diabetes

was getting out of control." Tr. 102. The longest she had held a job was from January

through August 2001, when she worked as a cashier 8 hours/day, 5 days/week. Tr. 103.

## **Statutory Protocol**

The burden is on the plaintiff to prove that she is disabled in order to establish her

right to disability insurance benefits. See Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.

Ct. 2287, 2294, 96 L. Ed. 2d 119 (1987). "Disability" is defined as:

> [the] inability to engage in any substantial gainful activity by reason
> of any medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12 months....

42 U.S.C. § 423(d)(1)(A). The Act further provides:

> An individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity
> that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy....

42 U.S.C. § 423(d)(2)(A).

The Social Security regulations prescribe a "five-step sequential inquiry into whether or not an applicant for benefits should be considered 'disabled' and thus eligible for benefits." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 (1st Cir. 1986) (citing 20 C.F.R. § 404.1520). Accord Mills v. Apfel, 244 F.3d 1, 2 (1st Cir. 2001) ("[c]omplex regulations, administered by the Commissioner . . . , prescribe substantive standards and a five-step protocol for making a disability decision."). Pursuant to that procedure, the Commissioner must determine:

> (1) whether the claimant is presently engaged in substantial gainful work activity;  (2) whether he has a severe impairment;  (3) whether his impairment meets or equals one of the Commissioner's listed impairments;  (4) whether he is able to perform his past relevant work;  and (5) whether he remains capable of performing any work within the economy.

Sousa v. Astrue, C.A. No. 08-218 S, 2009 WL 3401196, at *2 (D.R.I. Oct. 21, 2009) (slip op.). See also McDonald, 795 F.2d at 1120; 20 C.F.R. § 404.1520(a)(b)-(g).  However, "[a]ll five steps are not applied to every applicant, as the determination may be concluded at any step along the process." Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). See also 20 C.F.R. § 404.1520(a)(4)(i).

### The ALJ Decision

The ALJ concluded that Konz was "not disabled as defined by section 223(d) of the Social Security Act prior to May 8, 2000, the date she attained age 22" and therefore

Konz did not qualify for CIBD.  Dec. 8, Tr. 14.  In reaching this conclusion, the ALJ

used the five-step sequential evaluation process to evaluate Konz's claim.  Dec. 2, Tr. 8.

At step one of the analysis, the ALJ considered whether Konz engaged in "substantial

gainful activity" during the relevant period.  Id.  As the ALJ correctly described the

applicable criteria:

> "Substantial work activity" is work activity that involves doing
> significant physical or mental activities (20 CFR 404.1572(a)).
> "Gainful work activity" is work that is usually done for pay or profit,
> whether or not a profit is realized (20 CFR 404.1572(b)).  Generally,
> if an individual has earnings from employment or self-employment
> above a specific level set out in the regulations, it is presumed that
> she has demonstrated the ability to engage in SGA (20 CFR
> 404.1574 and 404.1575).  If an individual engages in SGA, she is not
> disabled regardless of how severe her physical or mental impair-
> ments are and regardless of her age, education, and work experience.
> If the individual is not engaging in SGA, the analysis proceeds to the
> second step.

Id.  While acknowledging that Konz claimed that she was unable to maintain her employ-

ment positions because of her seizures, even after working reduced hours and having

more breaks and extra help, the ALJ found that Konz had been employed in 1999 and

2000, after the alleged onset of her disability, and that she had earned more than the

regulations indicated qualified as substantial gainful employment.  Dec. 3-4, Tr. 9-10.

The regulatory amount was $500 a month for January 1999 through June 1999, and $700

a month for July 1999 through December 2000.  See 20 C.F.R. § 404.1574(b)(2).  Konz

earned $8,739.69 (approximately $728/month) in 1999, and $10,474.14 (approximately

$872/month) in 2000.  Dec. 4, Tr. 10.  See also Tr. 79.  Consequently, the ALJ concluded

that "the claimant has engaged in sustained substantial gainful activity in 1999 and 2000, prior to and after attaining age 22, and is therefore not eligible for child's disability benefits." Dec. 4, Tr. 10.  Nevertheless, since "the level of earnings was close to the presumptive substantial gainful employment level," the ALJ considered the period prior to this time and proceeded to the next step in the evaluation protocol.  Id.

At step two of the analysis, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe."  Dec. 2, Tr. 8.  See 20 C.F.R. § 404.1520(c).  "If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step."  Dec. 2, Tr. 8.  As noted above, the ALJ concluded that Konz's diabetes mellitus constituted a severe impairment, while the removal of her kidney did not "impose significant limitations[.]"  Dec. 4-5, Tr. 10-11.  These findings are not being challenged, and will not be discussed further.

The ALJ proceeded to step three, where the issue is whether any of the claimant's impairments, or combination of impairments, meets or medically equals any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  See 20 C.F.R. § 404.1520(a)(4)(iii); Dec. 5, Tr. 11.  The ALJ found that "[n]o treating or examining physician has indicated findings that would satisfy the requirements of any listed impairment" and that "[a] physician certified by the state agency has reviewed the medical evidence and determined that none of the claimant's impairments, either singly

or in combination, medically meet or equal the criteria of any listed impairments." <u>Dec.</u> 5, <u>Tr.</u> 11. The ALJ did consider "diabetes mellitus," which is a listed impairment, but concluded that "the claimant did not have objective evidence of neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements or gait or station nor did she have a visual impairment or acidosis during the requested period sufficiently severe to satisfy this listing." <u>Id.</u> Therefore, the ALJ concluded that Konz's condition did not satisfy the requirements of any listed impairment. <u>Id.</u> The claimant does not challenge this conclusion, which is supported by the record. Consequently, this finding will not be discussed further.

At the fourth step, the ALJ must determine whether "the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work[.]" <u>Seavey</u>, 276 F.3d at 5. If so, the claimant is not disabled. <u>See id.</u> It was at this stage in the analysis that the ALJ concluded that Konz retained the RFC to perform light work with certain restrictions. Thus, the ALJ concluded that "prior to attaining age 22, the claimant had the residual functional capacity to perform light work involving lifting twenty pounds occasionally and ten pounds frequently; involving avoidance of concentrated exposure to fumes, odors, dusts, gases or poor ventilation; and involving no work around hazards." <u>Dec.</u> 5, <u>Tr.</u> 11. The claimant challenges this finding.

In reaching his conclusion, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence[.]"  Id.  In particular, the ALJ considered Konz's

claims that "she has been unable to work in any capacity as a result of her impairments

since her alleged onset date[,]" that she had been "fired from every job she has had

because of her diabetes[,]" that the longest she had ever held a job "was six or seven

months[,]" that "she is a different person when she has insulin reactions and she is not

able to do much when her sugar is low[,]" and that she "stopped working because her

sugar was out of control."  Dec. 5-6, Tr. 11-12.  As the ALJ concluded:

> After considering the evidence of record, the undersigned finds that
> the claimant's medically determinable impairments could reasonably
> be expected to produce the alleged symptoms, but that the claimant's
> statements concerning the intensity, persistence and limiting effects
> of these symptoms are not entirely plausible to the extent alleged.
> The claimant alleges she was unable to work in any capacity during
> the requested period, but this is not supported by the objective
> medical evidence of record.  The claimant was able to care for her
> personal needs, prepare meals and do dishes.  She vacuums, does
> light cleaning and grocery shops.  She watches television, reads,
> takes short walks and she cares for her young son.  There is no
> medical evidence which indicates the claimant was unable to work in
> any capacity during the requested period.  Moreover, as mentioned
> earlier, the record reflects work activity after the alleged onset date.
> Although that work activity did not constitute disqualifying substan-
> tial gainful activity, it does indicate that the claimant's daily
> activities have, at least at times, been somewhat greater than the
> claimant has generally reported.  The undersigned Administrative
> Law Judge has considered the claimant's impairments and is not
> persuaded by the claimant's statements concerning her impairments
> and their impact on the ability to work during the requested time.
> The undersigned finds the degree of limitations to be not supported
> by the objective medical evidence of record.  For these reasons the
> undersigned Administrative Law Judge finds the claimant not fully
> credible and her subjective symptoms are given limited weight.

<u>Dec.</u> 6, <u>Tr.</u> 8 (record citations omitted).  The ALJ further reviewed and considered the medical evidence regarding Konz's hospitalizations, the absence of opinions from treating or examining physicians which would support a finding that the claimant was disabled during the relevant period, and the state agency medical opinion of the non-examining physician, wherein the physician concluded that the claimant was even less limited than found by the ALJ.  <u>Id.</u>

After reviewing the entire record, the ALJ concluded that the claimant was not disabled because she was able to perform, prior to May 2000, her past relevant work as a cashier.  <u>Dec.</u> 7, <u>Tr.</u> 13.  As the ALJ found, "[i]n comparing the claimant's residual functional capacity the claimant had prior to attaining age 22 with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed."  <u>Id.</u>  Therefore, the ALJ concluded, the "claimant has not been under a disability, as defined in the Social Security Act, at any time prior to May 9, 2000, the date she attained age 22 (20 CFR 404.350(a)(5) and 404.1520(f))."  <u>Id.</u>[6]

Additional facts will be provided below where appropriate.

## III.  **DISCUSSION**

---

[6]  The fifth step of the analysis is whether, given the claimant's RFC, age, education and work experience, the claimant is capable of performing other work.  <u>See</u> <u>Seavey</u>, 276 F.3d at 5.  If so, the claimant is not disabled.  <u>Id.</u>  At this step the Commissioner has the burden "of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  <u>Id.</u> (citing <u>Arocho v. Sec'y of Health & Human Servs.</u>, 670 F.2d 374, 375 (1st Cir. 1982)).  The ALJ did not reach this stage, since he found that Konz was able to perform her past position as a cashier.

A.      **Standard of Review**

Konz is seeking judicial review of the Commissioner's "final decision" pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405 (g).  The Act provides, in relevant part, that:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ....  The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by *substantial evidence*, shall be conclusive....

42 U.S.C. § 405(g) (emphasis added).  The Supreme Court has defined "substantial evidence" to mean "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  It has been explained that:

> In reviewing the record for substantial evidence, [the court is] to keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary."  The Secretary may (and, under his regulations, must) take medical evidence.  But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts. [The court] must uphold the Secretary's findings in this case if a

-16-

>reasonable mind, reviewing the record as a whole, could accept it as
>adequate to support his conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting

Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

This court finds that the application of these principles to the instant case compels

the conclusion that the Commissioner's final judgment denying Konz CIBD must be

affirmed.

### B.      The ALJ's Findings are Supported by Substantial Evidence

The ALJ's findings are supported by substantial evidence.  As to his first finding,

that Konz engaged in substantial gainful activity during the relevant time period, it is

undisputed that Konz's monthly earnings exceeded the annually adjusted threshold

amount in 1999 and 2000.  Therefore, it is presumed that she engaged in substantial

gainful activity during that period.  See 20 C.F.R. § 404.1574(a)-(b).  There is nothing in

the record to defeat this presumption and, based on this alone, the Commissioner's

decision should be affirmed.

Nevertheless, the ALJ did not rely on Konz's income in reaching his conclusion

that she was not disabled during the relevant period.  Rather, the critical, disputed finding

is that, as of May 2000, the claimant had the RFC to perform light work involving no

hazards and no concentrated exposure to fumes, odors, dusts, gases or poor ventilation.

This finding was also supported by substantial evidence.

As detailed above, the ALJ appropriately considered the evidence regarding Konz's ability to perform the tasks of daily living, maintaining her home and caring for her son, as well as her work history and skills.  The ALJ did not fully credit Konz's assessment of her own capabilities, but that determination was within his province.  Generally, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."  Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).  Here, when comparing Konz's testimony with the objective facts, the ALJ found that Konz had over-stated her limitations.  Moreover, the ALJ considered the fact that there was no medical evidence from the relevant time period compelling a different result.  In fact, any medical evidence supported the ALJ's determination.  Under such circumstances the ALJ's credibility determination, which was supported by specific findings that have a basis in the record, is entitled to deference.  Id.  Therefore, the ALJ's decision should be affirmed.

### C.   **Additional Evidence**

Konz has sought to introduce additional medical and employment records, as well as a letter of support from her boyfriend and perhaps her father.  See Docket 15-1; Pl. Br. at Ex. 1.  All of these materials post-date 2000, when she turned 22.  It is the claimant's contention that these materials should either be considered by this court, or the case should be remanded for consideration of this additional material by the Commissioner.

This court finds, however, that these materials may not be appropriately considered, and that no remand is warranted at this time.

A reviewing court, such as this one, is limited to the evidence "presented to the ALJ." Mills, 244 F.3d at 5. With respect to the issue of remand, 42 U.S.C. § 405(g) provides, in relevant part, that "[t]he [reviewing] court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding[.]" (Emphasis added). Interpreting the materiality requirement of § 405(g), the First Circuit has held that remand to the Commissioner is only appropriate if, in light of the proposed evidence, the Commissioner's decision "might reasonably have been different" upon consideration of that evidence. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 (1st Cir. 1987) (internal quotation omitted). "Good cause will be found for the failure to present the new and material evidence where the proffered evidence was unavailable at the time of the administrative proceeding." Conte v. McMahon, 472 F. Supp. 2d 39, 44-45 (D. Mass. 2007) (citing Bilodeau v. Shalala, 856 F. Supp. 18, 20-21 (D. Mass. 1994)). Here, Konz has failed to meet either requirement.

Konz has identified nothing in the additional medical or employment records which relates to the period in question, and/or would contradict the evidence, detailed above, on which the ALJ relied. There is nothing in the materials which Konz has sought to introduce which might reasonably have changed the ALJ's decision with respect to

whether Konz was disabled prior to her 22d birthday since none of the evidence relates to that period.  Therefore, the information is not "material."

Moreover, Konz's request for consideration of new evidence fails because she has not shown "good cause" for why this evidence was not provided below.  All of the proposed evidence existed at the relevant time.  Konz was notified in advance of her hearing before the ALJ that she had the right to submit additional evidence and seek a subpoena if necessary, Tr. 57-58, and Konz actually submitted additional evidence at the hearing.  Tr. 18-19.  After the hearing, the ALJ also notified Konz of the procedure for submitting additional evidence to the Decision Review Board if she chose to appeal the decision.  Tr. 4-5.  Nevertheless, she failed to do so.  Konz has not put forth any persuasive reason why this allegedly "new" information, which is not from the relevant time period, should become part of the record at this late date.

"Good cause" cannot be shown when "the documents were available at the time of the hearing and no justification was provided for why these records could not have been obtained . . . ."  Conte, F. Supp. 2d at 45.  Clearly Konz's father and boyfriend were known to Konz before the administrative process was concluded, and there is no explanation as to why such information was not provided previously.  Similarly, the medical records existed prior to the hearing as well, yet Konz did not seek to obtain the information in a timely manner.  This court recognizes that, despite being encouraged to obtain counsel, Konz was not represented at the hearing before the ALJ.  A"more lenient standard is applied in assessing the responsibility for failure adequately to develop the

-20-

[administrative] record" because Social Security proceedings are not "strictly adver-

sarial." <u>Conte</u>, 472 F. Supp. 2d at 45 (citing <u>Evangelista</u>, 826 F.2d at 142).  Nevertheless,

"[d]espite this leniency, Congress plainly intended that remands for good cause should be

few and far between, that a yo-yo effect be avoided — to the end that the process not bog

down and unduly impede the timely resolution of social security appeals." <u>Id.</u> (internal

quotation omitted).  The additional materials Konz has provided to this court do not

warrant a remand for further review by the Commissioner.

## IV.  <u>CONCLUSION</u>

For the forgoing reasons, this court recommends to the District Judge to whom this

case is assigned that the Commissioner's Motion to Affirm (Docket No. 14) be

ALLOWED and the Plaintiff's Motion to Appeal (Docket No. 16) be DENIED.[7]


     / s / Judith Gail Dein
     Judith Gail Dein
     U.S. Magistrate Judge

---

[7]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  <u>See</u> <u>Keating v. Sec'y of Health & Human Servs.</u>, 848 F.2d 271, 275 (1st Cir. 1988); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 604-605 (1st Cir. 1980); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1st Cir. 1983); <u>see also</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  <u>Accord</u> <u>Phinney v. Wentworth Douglas Hosp.</u>, 199 F.3d 1, 3-4 (1st Cir. 1999); <u>Henley Drilling Co. v. McGee</u>, 36 F.3d 143, 150-51 (1st Cir. 1994); <u>Santiago v. Canon U.S.A., Inc.</u>, 138 F.3d 1, 4 (1st Cir. 1998).